IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-20364
_____


AMERICOM PAGING CORP

                              Plaintiff-Appellant

    v.

MOTOROLA INC; MOTOROLA COMMUNICATIONS & ELECTRONICS INC

                              Defendants-Appellees

_____

          Appeal from the United States District Court
              for the Southern District of Texas
                        (CA-H-95-434)
_____
                         May 9, 1997
Before REAVLEY, KING, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

    Americom appeals the district court's grant of summary

judgment in favor of Motorola.  Finding no error, we affirm.

                        I. BACKGROUND

    Americom was in the business of selling and leasing pagers.

Motorola manufactured and supplied pagers to Americom on credit.

In July 1994, Americom stopped making payments on the

_____

    [*]Pursuant to Local Rule 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in Local Rule 47.5.4.

approximately $2 million debt it had incurred. In August, Motorola notified Americom that it was in default and accelerated the debt, pursuant to the credit agreements between Motorola and Americom. Americom, then in the process of selling the company, prepared and sent Motorola a letter attempting to work out terms of repayment. The final version of the letter agreement, dated November 15, 1994, set out the terms of repayment and stated that Motorola would forbear from collecting the overdue loans for a specified period of time. The letter agreement contained a release by Americom of all of its claims against Motorola. Based on the letter agreement, Motorola exercised forbearance as to its legal rights and did not sue Americom to recover the money owed during the time specified in the letter.

Americom sued Motorola in early 1995, alleging breach of contract and various tort claims. Motorola removed the suit to federal court and moved to dismiss and for summary judgment, claiming that all of Americom's claims except one were barred by the release in the November 15 letter. The district court found that Americom had relinquished its right to sue and granted summary judgment in favor of Motorola. Americom challenges this decision on the grounds that the letter agreement was not a valid and binding contract and that the release was procured by duress.

## II. DISCUSSION

*A. Standard of Review*

We review a grant of summary judgment de novo, applying the same criteria used by the district court in the first instance. Norman v. Apache Corp., 19 F.3d 1017, 1021 (5th Cir. 1994). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

*B. Choice of Law*

When federal court jurisdiction is based solely on diversity of citizenship, we must apply the choice of law rules of the forum state. Exxon Corp. v. Burglin, 4 F.3d 1294, 1298 (5th Cir. 1993). According to Texas law, "in all choice-of-law cases, except those contract cases in which the parties have agreed to a valid choice-of-law clause, the law of the state with the most significant relationship to the particular substantive issue will be applied to resolve that issue." De Aguilar v. Boeing Co., 47 F.3d 1404, 1413 (5th Cir.)(quoting Duncan v. Cessna Aircraft Co., 665 S.W.2d 414, 421 (Tex. 1984)), cert. denied, 116 S.Ct. 180 (1995). The district court correctly concluded that Texas was the state with the most significant relationship to the letter agreement and applied Texas law to determine its validity as a contract. Pursuant to the choice of law provision in the letter agreement, however, the district court correctly applied Illinois

3

law to resolve the duress issue.

*C. Contract Analysis*

Americom insists that the letter agreement is not a valid contract because Americom never signed the letter agreement, Motorola never returned a signed copy of the letter agreement to Americom, and there was no consideration. In fact, Americom mailed the first version of the letter agreement to Motorola with an executed signature page. From that point, Americom itself made all of the subsequent changes that were incorporated into the agreement. Americom and Motorola disagree over whether Americom sent the signature page with the final version of the letter agreement or whether Motorola simply detached the signature page from the first version of the agreement and attached it to the final version. Americom's claim that it never signed the final version of the letter agreement, which Americom refers to as a "draft proposal," does not create a genuine issue of material fact to defeat summary judgment.

Regardless of whether Americom signed the final version, its conduct led Motorola "reasonably to believe that a power to create a contract [had been] conferred." CORBIN ON CONTRACTS § 1.11 (1993). Not only did Americom prepare and sign the first draft of the letter agreement and make any subsequent changes to the document itself, but also Americom's statement on the fax cover sheet transmitted with the final version read: "Here is a copy of

4

the agreement.  Please forward a signed copy to me as soon as possible . . . ."  Furthermore, Americom's conduct after November 15 showed attempted compliance with the terms of the letter agreement.

Americom also makes much of the fact that Motorola did not return a signed copy of the letter agreement.  However, for acceptance of a contract to be valid, physical delivery of the executed document is not required.  Hearthshire Braeswood v. Bill Kelly Co., 849 S.W.2d 380, 392 (Tex. App.--Houston [14th Dist.] 1993, writ denied).  A party may accept a contract "by his acts, conduct or acquiescence in the terms of the contract."  Id. Motorola accepted the contract by exercising forbearance as to its legal rights for the time period specified in the agreement.

Americom's argument that it received no consideration for the contract is without merit.  Americom's purpose in drafting the letter agreement was to have Motorola forbear from suing to collect the debt.  Thus, Motorola's forbearance for the time period specified in the letter agreement constitutes consideration for the contract.  Gooch v. American Sling Co., 902 S.W.2d 181, 185 (Tex. App.--Fort Worth 1995, no writ); Duke v. First Nat'l Bank, 698 S.W.2d 230, 232 (Tex. App.--Beaumont 1985, no writ).

Americom argues that if any release agreement existed, its performance was excused because the agreement was a product of duress.  Americom asserts that Motorola exploited its financial

difficulties and forced it to enter into the letter agreement by cutting off its source of supply for paging equipment and threatening Americom with involuntary bankruptcy. Under Illinois law, duress is an objective test. Allen v. Board of Trustees, 675 N.E.2d 187, 190 (Ill. App. Ct. 1996). "Duress is a condition where one is induced by a wrongful act or threat of another to make a contract under circumstances that deprive one of the exercise of free will." Id. "Duress cannot be predicated upon a demand which is lawful or upon one's doing or threatening to do that which one has a legal right to do." Carlile v. Snap-on Tools, 648 N.E.2d 317, 322 (Ill. App. Ct. 1995). Americom has presented no evidence that Motorola's demand on it was wrongful or unlawful in any way. Motorola was merely enforcing its rights under the contract. Duress simply does not exist where a party has secured consent to an agreement by "hard bargaining or the pressure of financial circumstances." Id. Americom has not shown that a material fact issue exists as to whether it consented to the terms of the letter agreement under duress.

Americom raises several new legal theories for the first time on appeal. Americom argues that Motorola anticipatorily breached the agreement by not returning a signed copy of the agreement. It further alleges that fraud in the inducement of the release was not waived by Americom in the agreement. Finally, Americom asserts that when its outstanding debt was paid in full to Motorola from the proceeds of the sale of Americom,

6

there was accord and satisfaction for the letter agreement, and Americom was therefore freed from its release of claims against Motorola.  We do not address these theories because our review is limited to the summary judgment record before the trial court. Little v. Liquid Air Corp., 37 F.3d 1069, 1071 n.1 (5th Cir. 1994)(en banc).

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.